# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CHRISTOPHER JOHN CRANE,**

      **Plaintiff,**

      **v.**                    **Case No. 25-CV-566**

**FRANK J. BISIGNANO,**
**Commissioner of the Social Security Administration,**

      **Defendant.**

---

## DECISION AND ORDER

---

### 1. Background

Christopher John Crane has long suffered from obesity, anxiety, depression, and insomnia. He has previously been suicidal and received inpatient treatment as a result of his suicidal ideation. Due to these limitations, Crane alleges he has been disabled since October 16, 2019, and seeks supplemental security income and disability insurance benefits.

This is Crane's second such case in federal court. The Honorable Pamela Pepper reversed and remanded a prior decision by stipulation of the parties on October 31, 2022. (Tr. 1039.) The same Administrative Law Judge (ALJ), Brent Bedwell, considered Crane's case on remand. (Tr. 922). A new decision was issued on October 25, 2023, again finding Crane not disabled. (Tr. 922.) Crane now seeks judicial review of that decision.

### 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Crane "has not engaged in substantial gainful activity since October 16, 2019, the alleged onset date[.]" (Tr. 927.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Crane has the following severe impairments: bipolar disorder/depression, anxiety disorder with panic, and a sleep disorder. (Tr. 927.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments are of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria

2

set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Crane "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 928.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p.

The ALJ concluded that Crane has the RFC to perform work at all exertional levels but with the following nonexertional limitations:

> the claimant can maintain attention, concentration, persistence, and pace for simple and repetitive tasks with regularly scheduled breaks; can perform jobs that involve routine tasks and instructions; can have occasional interaction with the public, coworkers and supervisors; and can perform jobs having only occasional decision-making and changes in work setting.

(Tr. 930-31.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Crane is capable of performing past relevant work as a laborer, stores/warehouse worker. (Tr. 938.)

3

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that "there are other jobs that exist in significant numbers in the national economy that the claimant can also perform, considering the claimant's age, education, work experience, and residual functional capacity[.]" (Tr. 939.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4

### 4. Analysis

#### 4.1. Duplicative Decision

Crane first argues that the ALJ's decision does not rely on substantial evidence because it was a "virtual verbatim copying" of his previously remanded decision. (ECF No. 11 at 5.) Specifically, Crane claims that "the ALJ merely added a few citations to the 2023 decision and published the virtually identical decision from 2021." (ECF No. 11 at 5.) Crane alleges that this method omitted years of medical evidence and testimony collected and put forth after 2021. (ECF No. 11 at 6.) The Commissioner counters that an ALJ is not prohibited from repeating analysis from a prior decision. (ECF No. 17 at 4.)

After comparing the two decisions side-by-side, the court does not agree with Crane's assertion that the ALJ merely reissued his prior decision. The ALJ acknowledged at the outset that he incorporated portions of the prior decision, "particularly as to the claimant's allegations and treatment history." (Tr. 925.) But he also clearly discussed the new evidence of record—his decision is littered with references to treatment notes, reports, and examinations from 2022 and 2023. The present decision is more thorough than the first; the ALJ supplemented the incorporated portions of his earlier decision with specific, updated examples and citations to the more recent evidence available. The use of boilerplate language "does not automatically undermine or discredit the ALJ's ultimate conclusion." *Murphy v. Colvin*, 759 F.3d 811, 816, 816 (7th Cir. 2014). While language from a prior decision is not boilerplate per se, there will be overlap in cases that have been previously

remanded, particularly when discussing the claimant's self-reporting and earlier treatment history. In light of the ALJ's substantial and specific additions justifying his conclusion, the incorporation of language and evidence from the earlier decision does not automatically render this decision as lacking substantial evidence.

### 4.2. State Agency Findings and Crane's Testimony

Crane further argues that the ALJ committed reversible error by overlooking substantial evidence related to Crane's bipolar disorder, lumbar impairment, and plantar fasciitis. Crane supports this contention by claiming that the ALJ omitted "current" state agency findings (ECF No. 11 at 6; ECF No. 18 at 3) and did not give sufficient weight to Crane's testimony (ECF No. 11 at 13-15).

Crane is correct that the ALJ refers to the state agency findings from 2020 and 2021. But the record reflects that in 2023, Crane "failed to return questionnaires or respond to calls/voicemails left" by the state agency reviewer. (Tr. 1052; Tr. 1056.) Crane's recent medical evaluation contains "insufficient evidence" due to his own failure to cooperate. *See* Tr. 1056. Thus, there were no "current" state findings in the record for the ALJ to reference.

An ALJ has a duty to develop a full and fair record. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023). But that duty lessens when a lawyer makes the claimant's case for him, and the reviewing court should defer to the ALJ on the question of how much evidence must be gathered. *Id* at 1245 ("Deference comes from the practical reality that no record is 'complete'—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see

whether the claimant's condition changes, and so on.") (citation omitted). Moreover, the claimant has the "principal duty" to submit medical evidence, which the ALJ then supplements as needed. *Hally H. v. Bisignano*, No. 22 CV 7215, 2025 LX 338873, at *4 (N.D. Ill. Aug. 11, 2025) (citing *Bertaud v. O'Malley*, 88 F.4th 1242, 1244-45 (7th Cir. 2023)). To the extent that the record is underdeveloped as to recent state agency findings, it is Crane who is responsible. *See, e.g., Lynette J. v. Bisignano,* No. 23 CV 15924, 2025 LX 505133, at *6 (N.D. Ill. Dec. 15, 2025) (affirming ALJ's decision where the record's lack of medical-opinion evidence is directly attributable to plaintiff's failure to attend the consultative exam). The ALJ's inability to reference current state agency finding does not render his decision reversible on its face.

Crane then contends that the ALJ did not properly consider Crane's testimony related to his lumbar impairment, plantar fasciitis, and the severity of his bipolar disorder. (ECF No. 11 at 6-9.) When considering a claimant's subjective symptoms, the ALJ should only be overturned if the evaluation is "patently wrong, which means the decision lacks any explanation or support." *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025) (citing *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024)). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Id*. To evaluate subjective symptoms, ALJs should consider the claimant's (1) relevant medical evidence, including intensity and limiting effects of symptoms; (2) treatment and efficacy; (3) return to gainful activity; (4) work during disability period; (5) daily activities; and (6) statements inconsistent with the record. *Id.*

Here, there is no indication that the ALJ's assessment of Crane's subjective symptoms was patently wrong. It is not the case that the ALJ failed to mention Crane's bipolar disorder (Tr. 927), lumbar impairment (Tr. 928), or plantar fasciitis (Tr. 928). Rather, the ALJ found that Crane's medical records, reported daily activities, and routine treatment were at odds with the alleged severity of his self-reported symptoms. (Tr. 932.) The ALJ pointed to specific evidence in the record to support his findings. (Tr. 933.) For example, the ALJ acknowledged Crane's "intermittent right ankle pain and right-sided lumbar pain," but ultimately cited to specific treatment notes that "fail to document significant or ongoing treatment, abnormalities in diagnostic and/or clinical findings, or associated functional limitations." (Tr. 928.) The ALJ's findings do not lack explanation to the point that Crane's contrary testimony alone requires remand. *See, e.g., Loveless v. Colvin,* 810 F.3d 502, 508 (7th Cir. 2016) (noting that although claimant testified he could not work, "the ALJ reasoned that this contention was contradicted by the claimant's activities of daily living, his routine and conservative medical treatment since 2011, and many earlier reports of minimal or no pain").

### 4.3. Weight of Evidence

Crane alternatively argues that the ALJ ignored several lines of evidence that support a finding of disability. (ECF No. 11 at 9-21.) He claims that the omission of the following lines of evidence require remand: his work history, his bipolar disorder as evidenced by his sleep issues, social phobias, suicidal ideation, and inpatient treatment, and his treatment under the care of Dr. Vicente. (ECF No. 18 at 3-5.)

An ALJ is not required to spell out in the record every piece of evidence that he considered and then accepted or rejected; it is enough that the ALJ builds a logical bridge between the evidence and his conclusions. *Crowell v. Kijakazi*, 72 F.4th 810, 815 (7th Cir. 2023). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). But an ALJ cannot ignore an entire line of evidence that supports a finding of disability. *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023).

Crane first argues that the ALJ's failure to mention Crane's work history is a reversible error.[1] (ECF No. 11 at 13.) "Although a consistent work history weighs in favor of a positive credibility finding, it is still just one factor among many, and it is not dispositive." *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017) (citations and quotations omitted); *see also Best v. Berryhill*, 730 F. App'x 380, 383 (7th Cir. 2018) ("But none of these [Seventh Circuit] cases establish that an ALJ commits reversible error by not mentioning a claimant's work history in the written opinion."). Because failing to acknowledge work history is not a de facto reversible error, the court will not give more weight to Crane's work history. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) ("Our review is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ."); *see also Weaver v.*

---

[1] Plaintiff's brief refers to Plaintiff as "Stark" rather than "Crane" in this section. (ECF No. 11 at 12.) Plaintiff's counsel should take note if pasting this section into future briefs.

*Berryhill,* 746 F. App'x 574, 579 (7th Cir. 2018) ("a good work history is ... just one factor among many" that an ALJ considers in assessing symptom severity).

Crane then claims that the ALJ ignored his "ongoing and severe" symptoms of bipolar disorder, notably his social phobias, anxiety, and insomnia. (ECF No. 11 at 14-15.) Crane further argues that the ALJ minimized the significance of his suicidal ideations and past inpatient treatment. (ECF No. 11 at 15-17.) It is not the case that the ALJ ignored these lines of evidence. For one, the ALJ found that Crane had severe impairments with regards to his bipolar disorder, anxiety disorder, and sleep disorder. (Tr. 927.) But as is required, the ALJ referenced specific evidence in the record to support his finding that Crane is not disabled despite his severe impairments. *See* Tr. 933 (acknowledging Crane's "extreme fatigue" but pointing to ongoing sleep specialist treatment and medication that Crane reported making "a big difference"); Tr. 943 (observing that despite Crane's reports of "lack of overall motivation" and "good and bad days," the "psychiatric notes through August 2023 document continued stability in symptoms and mental status"). The ALJ also acknowledged Crane's history of suicidal ideation and record of inpatient treatment in 2019 due to "increased alcohol use and exacerbation in symptoms after self-weaning off his bipolar medication due to expense." (Tr. 932.) The ALJ's finding that Crane's subsequent residential treatment revealed "documented improvement" was not an illogical conclusion. *See, e.g., Justin v. Kijakazi,* No. 20-cv-1066-wmc, 2022 U.S. Dist. LEXIS 112789, at *15 (W.D. Wis. June 27, 2022) (finding that the ALJ did not err in its consideration of claimant's mental health impairments because the claimant

10

appeared stable following her second hospitalization and second ALJ hearing). It is not the court's place to assign different weight to evidence when the ALJ properly articulates his reasons for doing so. *See Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) ("We conclude that the administrative law judge properly considered Dr. Steele's opinion, articulated his reasons for giving it less weight, and was within his discretion for giving it the weight he did.").

Crane further alleges that the ALJ failed to properly cite and consider the treatment notes of his treating psychiatrist, Dr. Michael Vicente. (ECF No. 11 at 18-21.) He argues that by doing so, the ALJ ignored evidence that undercuts his conclusion. (ECF No. 11 at 20.) An ALJ considers the persuasiveness of all medical opinions in the record by evaluating their (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the provider's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c). Supportability is the degree to which "objective medical evidence and supporting explanations" support the opinion of the medical source. 20 C.F.R. § 404.1520c(c)(1). Consistency is the degree to which the medical opinion is consistent with "evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). "Failure to adequately discuss supportability and consistency requires remand." *Shaun v. Bisignano*, No. 3:24-CV-528-SJF, 2026 U.S. Dist. LEXIS 14639, at \*13 (N.D. Ind. Jan. 27, 2026) (quoting *Willis v. Acting Comm'r of Soc. Sec.*, Case No. 3:21-CV-178 JD, 2022 U.S. Dist. LEXIS 116679, 2022 WL 2384031, at \*3

(N.D. Ind. July 1, 2022)). The ALJ must point to specific facts in the record that support his conclusion.

Crane's contention that the ALJ's "decision does not mention Dr. Vicente by name" is incorrect. *See* Tr. 936 ("The record at the hearing level contains psychiatric treatment notes from Michael Vincente, MD, spanning from the claimant's October 2019 alleged disability onset date through May 2023 (12F; 16F; 18F)"). Further, the ALJ cites Dr. Vicente's treatment notes several times to acknowledge Crane's difficulties. *See* Tr. 932 (explaining that exhibits 12F and 18F reveal "the claimant has endorsed symptoms including mood swings, feeling anxious, excessive worry, restlessness, tension, paranoia, sleep disruption, fatigue, and suicidal ideation"). The ALJ even specifically states that Dr. Vicente's treatment notes "provide the most reliable evidence as to [Crane's] longitudinal mental function" and include "subjective reports of persistent (and at times significant) mental health symptoms." (Tr. 936.) In supporting his ultimate conclusion, however, the ALJ turned to Dr. Vicente's observations that Crane's mood and affect were relatively stable, he maintained appropriate interactions, and expressed fair insight and judgment. (Tr. 936.) He further acknowledged that "Dr. Vincente did not note observations as to deficits in the claimant's attention or concentration." (Tr. 936.)

The ALJ explained that he supported his finding by coupling Dr. Vicente's observations with other medical sources such as the "longitudinal reasonable mental status examinations conducted … [with] primary care, urgent care, sleep specialists." He further found Dr. Vicente's opinion to be consistent with Crane's reported

activities of "living alone, tending to at least basic personal care and household chores, preparing simple foods, driving, shopping in stores and/or online with arranged pickup, paying bills, managing medical care, playing video and board games, spending time with family/friends." *See, e.g., Crowell v. Kijakazi*, 72 F.4th 810, 818 (7th Cir. 2023) (noting that the judge "was well within his discretion" in considering claimant's ability to keep up with daily living functions). Consequently, the ALJ did not ignore a line of evidence related to Dr. Vicente's observations and built a logical bridge to reach his conclusion. *See Chrisman v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) ("We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts.").

### 4.4. Residual Functional Capacity

Finally, Crane takes issue with the ALJ's RFC assessment as well as the related hypothetical posed to the vocational expert (VE). (ECF No. 11 at 21.) Crane accuses the ALJ of "cherry-picking" evidence that misrepresents the severity of Crane's symptoms (ECF No. 11 at 24-26) and argues that a moderate RFC does not properly account for his true limitations in concentration, persistence, and pace (CPP). (ECF No. 11 at 21-25.)

A claimant's RFC is the maximum work he can perform despite any physical and mental impairments. 20 C.F.R. § 416.945(a)(1). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the

ruling." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (citation omitted). "[B]oth the hypothetical posed to the vocational expert and the ALJ's residual functional capacity assessment must incorporate all of the claimant's limitations supported by the medical record, including limitations in concentration, persistence, or pace." *Moy v. Bisignano*, 142 F.4th 546, 552-53 (7th Cir. 2025) (citations omitted). "To enable meaningful review, the ALJ must at least describe what the moderate limitations are and how they affect the claimant's ability to work." *Moy v. Bisignano*, 142 F.4th 546, 555 (7th Cir. 2025).

Here, the ALJ found that Crane has a moderate limitation in CPP, and that he can maintain attention, concentration, persistence and pace for simple and reputative tasks with regularly scheduled breaks. (Tr. 930-31.) The ALJ further limited Crane to jobs that only have occasional interaction with the public, coworkers and supervisors, and only require occasional decision-making and changes in work setting. (Tr. 931) The ALJ acknowledged Crane's sleep issues, social phobias, and his reports of being unable to pay attention for more than five minutes, but explained that "the evidence of record does not support a finding that [the limitations] are more than moderate." (Tr. 929-30.) The ALJ pointed to "the nature and scope of [Crane's] reported activities" (Tr. 935) and that "despite subjective reports of persistent lack of motivation and focus, treatment notes reflect overall attendance/engagement in treatment and improvement/stability in symptoms with psychiatric medication and CPAP use" (Tr. 934).

Crane disputes the ALJ's RFC finding by pointing to the examining opinion of Dr. Steve Krawiec, who found that Crane's bipolar disorder would interfere with his ability to maintain concentration, persistence, and pace, as well as complicate his ability to maintain regular attendance. (Tr. 596.) But "determination of a claimant's RFC is a matter for the ALJ alone—not any doctor—to decide." *Archibald v. Bisignano*, No. 25-C-1170, 2026 LX 242438, at \*35 (E.D. Wis. May 5, 2026) (citing *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014)). An ALJ considers the entire record when determining the RFC and is not required to rely entirely on a particular physician's opinion. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

In his decision, the ALJ acknowledged Dr. Krawiec's opinion that Crane "may have some difficulty getting to, remaining at, and performing efficiently at work during periods of depression, which could significantly interfere with persisting and maintaining pace." (Tr. 937.) But although the ALJ agreed that Dr. Krawiec's opinion was consistent with other evidence, the ALJ found it to be "vague as to *degree* of limitation." (Tr. 937.) He further countered Dr. Krawiec's opinion by pointing to other longitudinal psychiatric treatment notes demonstrating consistent attendance, engagement, and reasonable mental status examinations. (Tr. 937.) Thus, the ALJ's evaluation of Dr. Krawiec's observations was sufficient to meet the minimal standard. *Brumbaugh v. Saul*, 850 F. App'x 973, 976 (7th Cir. 2021) (The ALJ "explained that Sleesman's letter deserved little weight because it was 'vague, speculative, and conclusory'; did not cite any relevant supporting medical evidence; and did not specify any functional limitations or capabilities."); *see also Prohaska v. Bisignano,* No. 24-

C-1236, 2025 LX 401094, at *13 (E.D. Wis. Nov. 3, 2025) ("Because Dr. Krawiec did not include additional restrictions to accommodate any difficulty Plaintiff may have in maintaining well-being at work, the ALJ did not err in evaluating Dr. Krawiec's opinion.").

Finally, the hypothetical posed to the VE properly accounted for Crane's moderate limitation in CPP. The hypothetical included the additional guardrail of limiting simple and repetitive tasks to two hours at a time. (Tr. 1241.) In most cases, using the terms 'simple, repetitive tasks' on their own will lead the vocational expert to consider jobs that don't sufficiently account for functional limitations in concentration, persistence, and pace. *Pufahl v. Bisignano*, 142 F.4th 446, 460 (7th Cir. 2025); *see also Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). But by including the additional limitation of two-hour segments, the ALJ expressly included Crane's moderate limitation in concentration, persistence, and pace. *See Pufahl v. Bisignano*, 142 F.4th 446, 460 (7th Cir. 2025).

The ALJ's conclusion that, notwithstanding Crane's moderate limitation in concentration, persistence, and pace, he remains able to engage in substantial gainful activity with certain limitations was consistent with the law and supported by substantial evidence. Accordingly,

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is

**affirmed**. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 15th day of July, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge